UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ATHLETIC TRAINING INNOVATIONS, LLC.        CIVIL ACTION

VERSUS                                     NO:   10-1524

L.A. GEAR, INC                             SECTION: "C" (2)

**ORDER AND REASONS**

This matter comes before the Court on Defendant L.A. Gear, Inc.'s ("L.A. Gear") Motions to Dismiss the First and Second Amended Complaints for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). (Rec. Docs. 14 & 29). Plaintiff opposes the Motions. (Rec. Doc. 20 & 30). The Motions are before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court DENIES both of Defendant's Motions for the reasons stated below.

**I. Background**

Plaintiff, Athletic Training Innovations, LLC ("ATI") is a Louisiana Limited Liability Company with its principle place of business in Kenner, Louisiana. (Rec. Doc.1 at 1). Defendant, is a California corporation with its principle place of business in Los Angeles, California. *Id.*

1

Defendant manufactured and sold a popular brand of shoes in the 1980's and 1990's but since 1998 the Defendant only licences its brand to other shoe manufactures. (Rec. Doc. 14-1 at 3). The shoe model that is the center of this dispute is the L.A. Gear Catapult. *Id.* at 4. The Catapult was a high-top basketball shoe, which has not been sold or actively marketed by Defendant or its licensees since 2004. (Rec. Doc. 20 at 4). Nevertheless, in 2009 Defendant obtained a renewal of its trademark for the Catapult. *Id.* at 24.

Plaintiff manufactures the Katapult, which is a specialist training shoe designed to target the calf muscle in order to improve various athletic skills such as sprinting and jumping. *Id.* at 3. This design gives the Katapult an unorthodox appearance, with a double sole extending from the toe of the shoe until the arch of the shoe, looking, for lack of a better description, like reverse high heels. *Id.*

On May 5, 2010 Defendant issued a cease-and-desist letter to Plaintiff, informing them that Defendant owned the Catapult trademark and that the use of the name Katapult was likely to confuse customers. (Rec. Doc. 14-1 at 4). On the same day Defendant sent similar cease-and-desist letters to Plaintiff's largest customers. *Id.* In response to these letters, Plaintiff's customers cancelled their orders for the Katapult. (Rec. Doc. 1 at 6). As a result of these events, Plaintiff filed this suit against Defendant, alleging that L.A. Gear had (1) engaged in unfair competition as defined by the Lanham Act and Louisiana Unfair Trade Practices act (2) abandoned its trademark for the Catapult (3) procured the Catapult trademark through false statements and (4) intentionally interfered with Plaintiff's contractual relations with its customers. (Rec. Docs. 1 & 28).  Furthermore Plaintiff requests a declaratory judgment that it has not infringed Defendant's trademark and seeks an injunction pursuant to 15 U.S.C. § 1126, which would prevent Defendant from contacting Plaintiff's

customers. *Id.*

Defendant has responded to these allegations by asserting that this Court lacks personal jurisdiction because it has directed no contacts with Louisiana other than a single cease-and-desist letter to Plaintiff, which cannot form the basis of personal jurisdiction as a matter of law. (Rec. Doc. 14-1 at 2). Finally, Defendant argues that Plaintiff has failed to state a claim for which relief may be granted. *Id.*

## II. Legal Standards for a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)

### *a) Rule 12(b)(2) - Personal Jurisdiction*

In determining whether personal jurisdiction is proper, a district court applies the law of the state in which it sits. Fed.R.Civ.P. 4(e). Louisiana's Long-Arm Statute provides that this Court may exercise personal jurisdiction over any nonresident as long as the basis for such jurisdiction is consistent with the Constitution of the United States. La.Rev.Stat. Ann. § 13:3201. Consequently, the limits of the Louisiana Long-arm Statute are coextensive with the limits of constitutional due process. *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1192 (La.1987).

For a court to exercise jurisdiction over a non-resident defendant within the bounds of due process, two requirements must be fulfilled: (1) the defendant must have purposely availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The frequency of contacts is not determinative; the non-resident defendant's conduct must

be such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may give rise to general personal jurisdiction or specific personal jurisdiction. *Marathon Oil Co., v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). When the defendant's contacts with the forum state are not continuous and systematic, the court may exercise specific jurisdiction where "nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assoc., v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations omitted).When the defendant has continuous and systematic contacts with the forum state, the court may exercise general jurisdiction. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1999). The court must accept the plaintiff's uncontroverted allegations as true, and conflicts in the facts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motor Corp.*, 775 F.2d 1162, 1165 (5th Cir. 1985). In making its determination, the court may look outside the pleadings, and consider "affidavits, interrogatories, depositions, oral testimony, or any combination of ... recognized [discovery] methods." *Id.* The court need not accept conclusory allegations as true, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001). Moreover, the court need not "draw farfetched inferences." *Id.*

### b) Rule 12(b)(6) - Failure to State a Claim

Federal Rule of Civil Procedure 8(a) provides, in relevant part, that:

> [a] pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support; and
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed.R.Civ.P. 8(a).

Under Rule 8(a)(2), a plaintiff's short and plain statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570). A plaintiff must do more than pleads facts that are "merely consistent with" a defendant's liability. *Id.* Facial plausibility exists when the facts pleaded permit the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This is not to say that the plausibility standard is akin to a probability requirement, but it does ask

for more than the sheer possibility that a defendant has acted unlawfully. *Id.*

Plausibility pleading calls for "enough fact to raise a reasonable expectation that discovery will reveal evidence of the [unlawful conduct]." *Twombly*, 550 U.S. at 556. The *Twombly* Court further explained that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* Thus, plausibility pleading still retains the primary function of serving notice to a defendant of the pending claims, since a complaint that relies on legal conclusions and bare assertions would leave a defendant "seeking to respond to plaintiffs' conclusory allegations . . . [with] little idea where to begin." *Twombly*, 550 U.S. at 565.

### III. Analysis

#### a) *Rule 12(b)(2) - Personal Jurisdiction*

In this case, Plaintiff alleges injuries based on the mailing of cease-and-desist letters by Defendant to companies and individuals outside Louisiana but which had a foreseeable effect within Louisiana. (Rec. Doc. 20 at 11). Defendant responds by arguing that the cease-and-desist letters it sent were not directed at Louisiana but to Colorado and Pennsylvania. (Rec. Doc. 14-1 at 10). Moreover, the single cease-and-desist letter it sent to Plaintiff in Louisiana is insufficient as a matter of law to form the basis of personal jurisdiction, as Defendant was entitled to protect its trademark by informing Plaintiff of its possible infringement. *Id.* Defendant relies on three cases that its argues support the conclusion that a trademark holder is entitled to send cease-and-desist letters to potential infringers. *Id.*

The first of those cases is *Red Wing Shoe Co., Inc. v. Hockerson-Halbertstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), which held that cease-and-desist letters by themselves are insufficient to create personal jurisdiction in a declaratory judgment action. *Id.* at 1360. However, in that case the defendant had only sent cease-and-desist letters to the plaintiff directly, not to any of the plaintiff's customers. *Id.* at 1361. This is an important distinction, for the *Red Wing* court noted that while cease-and-desist letters provide minimum contacts sufficient for personal jurisdiction, the exercise of that jurisdiction would not comport with principles of fairness, since a patentee should not be subjected to jurisdiction simply because it informed a potential infringer of its rights. *Id.* Thus, under *Red Wing* the only reason cease-and-desist letters do not support personal jurisdiction is because to exercise such jurisdiction would unfairly restrict a patentee or trademark holder's rights. However, the *Red Wing* court further noted that if "a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products, a plaintiff may have little recourse other than a declaratory judgment action to disentangle its non-infringing business. In those instances, the cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action." *Id.* at 1360. Therefore, *Red Wing* itself supports the proposition that in certain circumstances cease-and-desist letters can give rise to a plaintiff's action if a patentee uses cease-and-desist letters abusively.

The Court finds that *Red Wings* can be distinguished on the grounds that in this case Defendant sent cease-and-desist letters not only to Plaintiff but to Plaintiff's major customers as well, which was abusive in light of the other option available to Defendant. For instance, if the Defendant had a genuine concern that Plaintiff was infringing its Catapult trademark it could have sent a cease-and-desist letter to the Plaintiff, which by itself would not have supported personal

7

jurisdiction. If Defendant was not satisfied with Plaintiff's response to such a letter, they could bring an action for trademark infringement in a court with proper jurisdiction. Such a course of action would have protected the Defendant's ability to preserve its trademark while also protecting Plaintiff from tortious interference with its business. But by issuing cease-and-desist letters directly to Plaintiff's customers, Defendant exposed itself to liability for the separate tort of intentional interference with Plaintiff's business relations. As a result, since this Court has to assume Plaintiff's allegations are true, Defendant has fallen into the *Red Wing* exception for abusive use of cease-and-desist letters and therefore those letters may form the basis of personal jurisdiction. This conclusion is not affected by the other two cases relied upon by Defendant, since both of those cases only involve a patentee or trademark holder sending cease-and-desist letters directly to the plaintiffs in those cases, not the plaintiff's customers. *See, e.g. Sinclair v. Studiocanal, S.A.*, 2010 WL 1743208, \*8 (E.D. La); *DNH, LLC, v. N-N-Out Discount Market, LLC*, 381 F.Supp.2d 559, 564 (E.D. La. 2005).

But even if the Defendant's use of cease-and-desist letters might form the basis of a separate tort, which could then support personal jurisdiction, Plaintiff still must establish that such personal jurisdiction over the Defendant does in fact exist. To that end, Plaintiff argues that even though Defendant sent cease-and-desist letters to its clients outside of Louisiana, those letters had foreseeable effects within Louisiana. (Rec. Doc. 20 at 11). Defendant maintains that the application of the "effects" doctrine is inappropriate in this case because the letters it sent to Plaintiff's customers were not directed at Louisiana and therefore do not establish minimum contacts with Louisiana. (Rec. Doc. 29-1 at 2).

Defendant is correct to note that *Panda Brandywine* holds that foreseeable injury without

a specific act directed towards the forum is insufficient to confer specific jurisdiction. *Panda Brandywine Corp.*, 253 F.3d at 869. However, *Panda Brandywine* was a case brought in the Northern District of Texas, which involved the activities of power and finance companies engaged in a specific business and financing venture in the Maryland, DC and Virginia region. *Id.* In that case the plaintiff was a Texas company that alleged personal jurisdiction over the defendants because "on information and belief" the defendants knew it was a Texas company and could foresee that their actions would cause injury in Texas. *Id.* The court held that the fact that the plaintiff was from Texas was a mere fortuity and that because the defendants had taken no actions directed at Texas, there was no personal jurisdiction over the defendants. *Id.*

In the present case, since the Defendant specifically sent a cease-and-desist letter to the Plaintiff in Louisiana, it is clear that Defendant knew Plaintiff was a Louisiana company. Unlike *Panda Brandywine*, the business activities at question in this case all clearly involve the sale of Plaintiff's shoes in the forum state of Louisiana. As a result, the due process concerns in *Panda Brandywine* are not implicated because the Defendant knew that it was contesting the business activities of a Louisiana company that were at least in part conducted in Louisiana. Therefore, the Defendant could have reasonably anticipated being hailed into Louisiana court, which satisfies the requirements of *Panda Brandywine*. *Id.* at 870.

It is disingenuous for the Defendant to argue that its activities were not directed at Louisiana because they only mailed cease-and-desist letters to companies outside of Louisiana for the locations of the companies they contacted are a mere fortuity. More importantly is the fact that the cease-and-desist letters were intended to convince Plaintiff's customers to cease buying the Katapult shoe from the Plaintiff, which Defendant knew was a Louisiana company. Since these letters were designed to

prevent Plaintiff from retaining customers, the Court finds that they were "purposefully directed" towards a Louisiana resident. This conclusion is further supported by *Central Freight Lines Inc. v. APA Transport Corp.*, which held that "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Central Freight Lines, Inc.*, 322 F.3d 376, fn. 6 (citing *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982).

In *Central Freight Lines* the Fifth Circuit held that because the defendant was aware of the plaintiff's contractual relationships in Texas, it was no mere fortuity that the plaintiff suffered harm in Texas. *Id.* at 384. As a result, the *Central Freight Lines* court found that the effects of the defendant's actions were sufficient to establish personal jurisdiction in Texas despite the fact that the defendant's acts took place in New Jersey. *Id.* Similarly, in this case Defendant was aware of Plaintiff's contractual relations with its customers and nevertheless took actions that had the foreseeable effect of causing business activity in the forum state of Louisiana. As a result this Court finds that it has personal jurisdiction over Defendant because of its purposeful actions, which had a foreseeable effect in Louisiana.

Judge Easterbrook of the Seventh Circuit reached the same conclusion when faced with a nearly identical case involving a copyright holder that threatened lawsuits against the customers of an alleged infringer. *Janmark, Inc., v. James T. Reidy,* 132 F.2d 1200 (7th Cir. 1997). In that case Judge Easterbrook held that:

> The tort of which [plaintiff] complains is interference with prospective economic advantage by making false claims of copyright infringement, and this tort was not complete (because no injury occurred) until [plaintiff's] customer cancelled its order; the injury and thus the tort occurred in [the forum where the plaintiff received the cancellation]...and there can be no serious doubt after *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), that the state in which the victim of a tort

suffers the injury may entertain a suit against the accused tortfeasor.

*Id.* at 1202.

This Court further finds that the exercise of jurisdiction over Defendant in this case will not "violate traditional notions of fair play or substantive justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Having established that Defendant has minimum contacts with Louisiana, the burden shifts to Defendant to make a compelling case that the assertion of jurisdiction would be unfair and unreasonable. *Central Freight Lines, Inc.*, 322 F.3d at 384. When determining whether exercising jurisdiction would be reasonable in a given case the court must balance the following factors: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id.*

Defendant argues that it would be burdened by the exercise of jurisdiction in this case because it has no ties with Louisiana and because exercising jurisdiction in this case would interfere with its ability to protect its trademark. (Rec. Doc. 14-1 at 2). However, the Court has already discussed Defendant's ability to protect its trademark through means that would not also interfere with Plaintiff's contractual relations with its customers. Moreover the burden of requiring Defendant to litigate this case in Louisiana is no more than would be the burden of requiring Plaintiff to litigate it in California. It is also clear that Louisiana has an interest in the case as Louisiana has the express public policy of protecting local businesses from unfair trade practices and the tortious interference with their contracts. La.Rev.Stat. Ann. § 51:1401 *et seq*. Finally, the factor of interstate judicial economy does not seem relevant since there is no outstanding litigation regarding this case in another

11

forum. Consequently, the Court finds that exercising personal jurisdiction over the Defendant would not violate traditional notions of fair play and substantial justice.

Since this Court finds that it has specific personal jurisdiction over the Defendant, it is unnecessary to address the parties' arguments about general jurisdiction.

### *b) Rule 12(b)(6) - Failure to State a Claim*

In the alternative Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted. (Rec. Doc. 14-1 at 12). First, Defendant argues that Plaintiff has failed to state a claim for unfair competition because a trademark holder has the right to defend against infringement. *Id.* Defendant cites *Spangler Candy Co. v. Crystal Pure Candy Co.*, 235 F.Supp 18 (N.D. Ill. 1964), in support of its argument that a trademark owner is entitled to warn the customers of an alleged infringer that they may also be liable for infringement. (Rec. Doc. 14-1 at 13). According to Defendant, such warnings are not unfair business practices unless false or in bad faith. *Id.* Plaintiff responds by pointing out that it asserted that Defendant's cease-and-desist letters were "baseless", which is synonymous with "false". (Rec. Doc. 20 at 17). Specifically, Plaintiff's have alleged that Defendant abandoned its Catapult trademark and that therefore sending cease-and-desist orders regarding that non-existent trademark was both false and in bad faith. *Id.*

The Court finds that the Plaintiff has not merely plead the formulaic elements of unfair competition but rather has "give[n] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Plaintiff has alleged that Defendant sent cease-and-desist letters to Plaintiff's customers, which stated that Plaintiff was infringing the Catapult trademark by using the Katapult name, which would confuse customers. (Rec. Doc. 20 at 5). Plaintiff has further argued that the Katapult shoe could not be confused with the Catapult as they are aimed at very

12

different markets so as not to be in competition with each other. *Id.* at 4. Finally, Plaintiff argues that Defendant has not marketed the Catapult since 2004, which shows presumptive abandonment of their Catapult trademark. *Id.* While not taking a position on the merits of Plaintiff's claims, it is clear that they are plausible and provide more than enough notice to the Defendant of what the grounds of the dispute are.

Second, Defendant argues that even if Plaintiff has alleged bad faith or falsity it has not plead the elements of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), which requires: (1) a false or misleading statement of fact; (2) the statement actually deceived or is likely to deceive a substantial segment of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant caused the statement to enter into interstate commerce; and (5) the statement resulted in actual or probable injury to plaintiff. (Rec. Doc. 14-1 at 14). Plaintiff asserts that it has satisfied all of the above elements by pleading that Defendant has asserted ownership of a trademark that it abandoned in addition to claiming that the Katapult trademark was likely to confuse customers. (Rec. Doc. 20 at 19). Plaintiff argues that both of these statements were false or misleading and in fact deceived Plaintiff's customers, who cancelled their orders as a result of these misstatements. *Id.* Since Defendant's communications clearly entered interstate commerce, the Court finds that Plaintiff has stated a viable claim for unfair competition under the Lanham Act.

Third, Defendant argues that Plaintiff has failed to plead with particularity any deceptive trade practice under the Louisiana Unfair Trade Practices Act ("LUTPA") La.Rev.Stat. Ann. § 51:1401 *et seq*. (Rec. Doc. 14-1 at 15). Plaintiff responds by reiterating its previous argument that Defendant's allegation of rights to an abandoned trademark and allegation of likely consumer confusion through

13

the use of the Katapult name were both in bad faith or false. (Rec. Doc. 20 at 21). Plaintiff asserts that these allegations are sufficient to state a claim under LUTPA. *Id.* This Court agrees with Plaintiff as it finds the complaint to contain sufficient facts to inform Defendant of the grounds that constitute Plaintiff's LUTPA claim.

Fourth, Defendant argues that since Plaintiff has not stated a claim under 15 U.S.C. § 1125 it is not entitled to an injunction under 15 U.S.C. § 1116. (Rec. Doc. 14-1 at 16). However, since this Court has found that Plaintiff has stated a claim under § 1125, Plaintiff's request for injunctive relief shall not be dismissed at this stage of the litigation.

Fifth, Defendant argues that Plaintiff has not alleged the elements of a trademark abandonment claim since it failed to plead that Defendant had no intention of ever using the Catapult trademark again. (Rec. Doc. 14-1 at 17). Plaintiff responds by pointing out that under the Lanham Act, non-use of a trademark for three consecutive years is prima facie evidence of abandonment. (Rec. Doc. 20 at 22) (citing *Newsouth Comm. Corp. v. Universal Telephone Co.*, 2002 WL 31246558 at *12 (E.D. La. 2003). Furthermore Plaintiff argues that Defendant is confusing issues of what must be proven at trial with what must be plead. (Rec. Doc. 20 at 21). The Court agrees that Defendant is confusing issue of proof with issues of pleading. The Plaintiff is merely required to plead sufficient facts that if accepted as true would state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Here Plaintiff has plead sufficient facts, which if true, would establish that Defendant has abandoned its Catapult trademark, including the claim that Defendant has no intent to reuse the Catapult trademark.

Sixth, Defendant argues that Plaintiff cannot allege a claim for false procurement of a federal trademark registration because such a claim requires a showing that a defendant knowingly made a

false statement to the Patent and Trademark Office ("PTO") regarding a material fact. (Rec. Doc. 29-1 at 4). Plaintiff responds by arguing that Defendant has again confused what must be proven at trial with what must be plead in order to state a claim for which relief may be granted. (Rec. Doc. 30 at 5). Plaintiff asserts that it has plead sufficient facts, which if assumed to be true, can support all of the elements of a false procurement claim, even if they did not specifically plead that Defendant knew its statements to the PTO were false. *Id.* The Court agrees that Plaintiff is not required to plead the formulaic elements of a cause of action so long as it provides sufficient facts that if true would entitle it to the requested relief. Here, Plaintiff has provided enough facts to give Defendant notice of the basis of their claim. Moreover, if the Plaintiff's allegations are true that Defendant informed the PTO that it was continuously using the Catapult trademark when in fact it had not been used since 2004, then the Plaintiff would be entitled to the requested relief, since a fact finder could infer the required mental state from the circumstances of the Defendant's statement.

Finally, Defendant argues that Plaintiff cannot state a claim for intentional interference with its contractual relations because under Louisiana law such a claim only arises when a corporate officer intentionally causes her own corporation to breach the corporation's contract with the complaining party - which does not apply in this case. (Rec. Doc. 29-1 at 2) (citing *Glod v. Baker*, 899 So.2d 642, 650 (La. App. 3 Cir. 2005); *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989). Plaintiff responds by pointing out that both of the cases cited by Defendant address the limited question of when a corporate officer is personally liable for a corporation's breach of contract, not the general elements of an intentional inference with contractual relations claim. (Rec. Doc. 30 at 2). The Court agrees that the cases cited by Defendant do not support its argument.

## **IV. Conclusion**

Accordingly,

IT IS ORDERED that Defendant's Motions to Dismiss are DENIED. (Rec. Docs. 14 & 29)

New Orleans, Louisiana, this 18th day of October, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**